IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SAMUEL ELLIOTT,

     Petitioner,

v.                                       Civ. No. 21-226 MLG/GBW
                                         Cr. No. 14-3822 MLG/GBW

UNITED STATES OF AMERICA,

     Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before me pursuant to the Court's Order of Reference

Relating to Prisoner Cases (*docs. 26, 58*), referring Petitioner's Motion Under 28 U.S.C. §

2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (*doc. 1*)[1]

for analysis, proposed findings, and recommended disposition.  Having reviewed the

record before the Court in the instant case and the underlying criminal case, and the

evidence and arguments presented at the hearing held by the undersigned (*docs. 54, 56*)

I recommend that the Motion be DENIED.

---

[1] Citations to "*doc.*" refer to docket numbers filed in Civ. No. 21-226 MLG/GBW.  Citations to "*cr. doc.*" refer to the attendant criminal docket, Cr. No. 14-3822 MLG/GBW.

## I.     BACKGROUND

On November 12, 2014, a grand jury issued an eight-count indictment charging Petitioner with three counts of production of a visual depiction of a minor engaging in sexually explicit conduct under 18 U.S.C. §§ 2251(a), 2251(e), and 2256, and five counts of possession of a matter containing visual depictions of minors engaged in sexually explicit conduct under 18 U.S.C. §§ 2252(a)(4)(B), 2252(b)(2), and 2256.  *Cr. doc. 1.*  The Court appointed attorney Stephen Hosford to represent Petitioner after counsel initially appointed to represent Petitioner withdrew.  *Cr. doc. 13*; *see also doc. 17* at 2.

On July 23, 2015, a grand jury returned a superseding indictment charging Petitioner with three counts of production of a visual depiction of a minor engaging in sexually explicit conduct under 18 U.S.C. §§ 2251(a), 2251(e), and 2256, and five counts of possession of material containing images of child pornography involving prepubescent minors under 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), 2256(2)(A), and 2256(8)(A).  *Cr. doc.* 28.  A Form 13 presentence report was disclosed on February 5, 2016.[2]  *Doc. 17-2.*  On March 2, 2016, Petitioner entered a conditional plea agreement in which he pled guilty to all eight counts of the superseding indictment.  *Cr. doc. 73* at 2*.* A second presentence report was disclosed on February 2, 2017, which calculated a total

---

[2] The guideline sentencing range assessed in this report was incorrect and was later amended by the presentence report issued on February 2, 2017.  *Doc. 17* at 3; *see doc. 17-2* at ¶ 87; *cr.doc 77* at ¶ 134.

offense level of 43, assigned Prisoner a criminal history category of III, and returned a

guideline sentence of 2,280 months (190 years).[3]  *Cr. doc. 77* at ¶ 134.

The amended presentence report included several recommended sentencing

guideline enhancements, including U.S.S.G. §§ 2G2.1(b)(4) and 2G2.2(b)(4), *see id.* at ¶¶

40, 51, which each provide an enhancement of 4 levels if the underlying offense

"involved material that portrays … sadistic or masochistic conduct," U.S. Sent'g

Guidelines Manual §§ 2G2.1(b)(4), 2G2.2(b)(4) (U.S. Sent'g Comm'n 2018).  Because

"sadistic conduct can include the penetration of a young child … by an adult," *cr. doc.*

*77* at ¶¶ 40, 51, the report applied these enhancements on the basis of various images

and videos recovered by the New Mexico State Police and agents with the Department

of Homeland Security which purport to show at least one instance where Petitioner

inserted his fingers and penis into a child's vagina, *see generally id.* at ¶¶ 11-30.

Petitioner filed initial objections to the presentence report on May 1, 2017, *see cr. doc. 85*,

and amended objections on November 2, 2017, *see cr. doc. 98*, which included the

objection that the evidence did not support the application of U.S.S.G. § 2G2.1(b)(4)

because it did not show Petitioner penetrating any of the victims, *cr. doc. 85* at ¶¶ 16, 19,

23; *cr. doc. 98* at ¶¶ 7, 13, 26, 28, 31.

---

[3] Based on Petitioner's total offense level and criminal history category, Petitioner's guideline imprisonment range of life exceeded the statutory maximum sentence.  Therefore, Petitioner's guideline sentence was set at the statutory maximum pursuant to U.S.S.G. § 5G1.2(b).  *Cr. doc. 77* at ¶ 134.

The sentencing judge, Judge Brack, held an evidentiary hearing on Petitioner's objections to the presentence report on June 4, 2018, where Petitioner testified that the video evidence would not show penetration despite Judge Brack's warning that if the video evidence contradicted Petitioner's testimony, it would be "devastating to [Petitioner's] credibility." *Cr. doc. 112* at 111:22-114:7; *cr. doc. 113* at 2. After reviewing the video evidence at issue, Judge Brack ultimately found that "[t]he video involving [the victim] clearly shows both digital and penile penetration," that the video evidence did support the application of U.S.S.G. § 2G2.1(b)(4), and that Petitioner's testimony to the contrary was "not worthy of credit in any respect." *Cr. doc. 113* at 2.

Petitioner entered an amended conditional plea agreement on June 26, 2018, in which he pled guilty to Counts 1-6 and 8 of the superseding indictment and agreed that Count 7—one of the five possession counts—would be dismissed by the prosecution at sentencing.[4] *Cr. doc. 122* at ¶¶ 3, 33. On July 2, 2018, Petitioner was sentenced to 170 years in custody, composed of 360 months for each of the three production counts, running consecutively, and 240 months for each of the four possession counts, running consecutively. *Cr. doc. 139* at 99:21-100:5. At sentencing, the Court awarded $730,036.00 in restitution to the three identified victims, with the total amount of restitution left

---

[4] An amended plea agreement was necessary because the first plea agreement did not contain the offense elements. *Doc. 17* at 3 n.6; *cr. doc. 122* at ¶ 4.

open for a period of 90 days during which other victims could also request restitution. *Id.* at 101:17-20.

On July 17, 2018, Petitioner appealed the amended judgment (*cr. doc. 133*) and, *inter alia*, the Court's denial of his motion to dismiss Counts 2 and 5-8 (*cr. doc. 21*) as multiplicitous.[5]  *Cr. doc. 136* at 1.  The Tenth Circuit determined that Counts 5, 6, and 8 were multiplicitous and directed the District Court to vacate those convictions and sentences.  *Cr. doc. 160-1* at 2, 12.  The District Court entered another amended judgment on June 25, 2020, which vacated the sentences imposed in Counts 5, 6, and 8; imposed a sentence of 1,320 months (110 years) for Counts 1-4; and left the restitution order of $730,036.00 in place.  *Cr. doc. 169* at 1, 3, 6.

Petitioner filed a *pro se* Motion to Vacate Federal Sentence Under 28 U.S.C. § 2255 ("Motion") and memorandum in support on March 12, 2021.  *See cr. doc. 170*; *docs. 1, 2.* The United States filed a response on August 20, 2021.  *Doc. 17.*  On August 3, 2022, the undersigned held an evidentiary hearing on the petition at which Petitioner and Mr. Hosford testified.  *Docs. 54, 56.*

## II.   ANALYSIS

Petitioner raises three grounds for relief based on ineffective assistance of counsel.  First, Petitioner claims that Mr. Hosford failed to review the evidence

---

[5] Petitioner was represented by separate appellate counsel for his appeal before the Tenth Circuit, but Mr. Hosford again represented Petitioner at resentencing.  *Doc. 17* at 5.

supporting the charges against him and failed to advise Petitioner concerning the factual accuracy of the presentence reports and the risks involved in pursuing his objections to them. *Doc. 1* at 4; *doc. 2* at 1-7. Second, Petitioner claims that Mr. Hosford provided ineffective assistance during plea bargaining because of his alleged failure to review evidence and failure to communicate early plea offers. *Doc. 1* at 5; *doc. 2* at 7-9. Third, Petitioner claims that Mr. Hosford failed to correct two alleged errors made by the Court in awarding $730,036.00 in restitution. *Doc. 1* at 7; *doc. 2* at 10-13.

For Petitioner to succeed on a claim of ineffective assistance of counsel, he must demonstrate that (1) "counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Both prongs of the test must be satisfied. *Byrd v. Workman*, 645 F.3d 1159, 1167-68 (10th Cir. 2011). Although *pro se* pleadings must be liberally construed, it is Petitioner's burden to support a claim of ineffective assistance with specific factual averments. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

In evaluating the effectiveness of counsel under the first prong of *Strickland*, counsel's performance is deficient if it "fell below an objective standard of reasonableness as measured against prevailing professional norms." *Sandoval v. Ulibarri*, 548 F.3d 902, 909 (10th Cir. 2008). In analyzing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance" and the petitioner bears the burden of proof to overcome that presumption. *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted); *United States v. Cronic*, 466 U.S. 648, 658 (1984). To show that the defense was prejudiced under *Strickland's* second prong, the petitioner must establish "that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Byrd*, 645 F.3d at 1168 (internal quotation marks and citation omitted). A reasonable probability must be "substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), and must be "sufficient to undermine confidence in the outcome," *id.* at 104 (quoting *Strickland*, 466 U.S. at 694).

> **Claim 1: Mr. Hosford's alleged failure to review evidence and to correctly advise Petitioner concerning his objections to the presentence report.**

Petitioner first argues that, because he did not know the operative definition of "penetration," he mistakenly believed that the Form 13 presentence report and amended presentence report, which state that Petitioner inserted his fingers and penis into a child's vagina, *see cr. doc. 77* at ¶ 12, were factually inaccurate, *doc. 2* at 1. Because he believed the reports were inaccurate, Petitioner insisted on objecting to those findings which necessitated his testimony on the point. *Id.* at 1-7. Petitioner argues that his definitional misunderstanding should have been corrected by Mr. Hosford. *Id.* Specifically, Mr. Hosford should have properly advised him about the correct operative definition, and should have reviewed "the actual images or videos [Petitioner] was charged with producing or possessing," and explained to Petitioner that they did in fact

7

meet the operative definition of penetration.  *Id.*  Petitioner contends that if Mr. Hosford had corrected Petitioner's misunderstanding of the legal meaning of "penetration," Petitioner would not have maintained his objection that the presentence report was factually inaccurate, and Mr. Hosford would not have "irresponsibly advised [him] to testify at the evidentiary hearing on June 4, 2018."  *Id.* at 3.  Petitioner acknowledges that his testimony was strategically ill-considered because it directly contradicted the prosecution's characterization of the video evidence and therefore compelled the sentencing judge, Judge Brack, to watch the video at issue.  *Id.* at 6.  Petitioner argues that the sentencing court was subsequently led to "question[] [Petitioner's] truthfulness," *id.*, when the video evidence disproved Petitioner's argument that there was "contact, not penetration," *cr. doc. 112* at 113:4-5.  Petitioner asserts that Mr. Hosford is to blame for Petitioner's "heated" interaction with the sentencing court at that hearing because of his choice to call Petitioner as a witness.  *Doc. 2* at 4. Consequently, Petitioner contends that his testimony at the evidentiary hearing "eliminated any possibility of the Court "considering any thing [sic] but a within-Guid[e]lines sentence, much less a downward departure."  *Id.* at 7.

To fully understand Petitioner's argument here, it is useful to break it down into its component elements.  Those elements are as follows:

    (i)     Petitioner held a common dictionary understanding of the definition of "penetration;"

    (ii)    Unbeknownst to him, the "operative" definition of "penetration" was a

more encompassing "legal definition;"

(iii)    His conduct with the victims on the videotape constituted penetration
         pursuant to the "legal definition," but not his common definition;

(iv)    Because he believed there was no penetration based on this definitional
         inconsistency, he testified in support of his objection to a finding that
         there was penetration;

(v)     His attorney failed to either (a) explain the operative definition, or
         (b) watch the videos and then inform Petitioner that penetration under the
         "legal definition" was shown;

(vi)    If his attorney had not failed him in that regard, Petitioner would not have
         testified; and

(vii)   His testimony denying penetration led to a higher sentence than the judge
         would have otherwise imposed.

Several of these elements are fundamentally flawed in ways fatal to his argument.

        As noted above, Petitioner's argument implicitly, but crucially, assumes that

Judge Brack's finding that the videos demonstrated Petitioner penetrating his child

victims was based upon a definition of "penetration" that Petitioner did not understand

at the time of his sentencing objections' hearing testimony.  Petitioner insists that "my

understanding of the meaning of insertion and penetration differed dramatically from

the legal definition of those terms.  My attorney, of course, would be required to know

how those terms are defined in the statutes applicable to Count 1…."  *Doc. 2* at 2.

Petitioner clarified at the hearing on the instant petition that "I knew the Webster's

definition, which was 'to enter.'  But I didn't know that that – that contact – I didn't

know that contact could be construed as penetration according to the law."  *Doc. 56* at

38:12-16.  Petitioner, though, does not explicitly identify the "legal definition" he claims was applied and how that definition would be materially different from the dictionary definition.  Based on the petition, the parties' briefing and the testimony at the petition hearing, the Court presumes that, regarding the "legal definition," Petitioner is referring to the phrase used by the prosecutor when he cross-examined Petitioner at his sentencing objections hearing.  There, the prosecutor asked, "So if an expert told you that 'penetration' means 'penetration, however slight,' then you would accept that that was 'penetration'?"[6]  *Cr. doc. 112* at 95:19-21.  As for whether the prosecutor's phrase was the "legal definition" of "penetration," the Court recognizes that this phrase is used in the definition of "sexual act" in 18 U.S.C. § 2246(2)(A): "As used in this chapter -- … the term 'sexual act' means-- "(A) contact between the penis and vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight[.]"[7]  Indeed, at the hearing on the instant petition, Petitioner's counsel asked Petitioner if Mr. Hosford had showed him the "definition from the 2246 – the operative statute – what those definitions were?"  *Doc. 56* at 12:15-16; *see also doc. 2* at 3 (Petitioner referencing the "definitions set-out [sic] in 18 U.S.C. § 2246[.]").  The problem for Petitioner is that he is mistaken that this phrase from § 2246

---

[6] Petitioner's response was: "No. 'Penetration' would mean 'to enter,' to penetrate. I never did that." *Cr. doc. 112* at 95:22-23.

[7] The prosecutor also referenced this phrase in his Response to Defendant's Amended Objections to the Pre-Sentence Report.  *See cr. doc. 99* at 2, n.1.

was "operative" or the relevant "legal definition" for the pertinent issue before the sentencing judge.

Petitioner had pled guilty to and was being sentenced for production of a visual depiction of a minor engaging in sexually explicit conduct under 18 U.S.C. §§ 2251(a), 2251(e), and 2256, and possession of material containing images of child pornography involving prepubescent minors under 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), 2256(2)(A), and 2256(8)(A).  Those statutes do not even include the term "sexual act" and Petitioner's charges did not involve that legal term.  *See* 18 U.S.C. §§ 2256 (definitions for chapter under which Petitioner was charged).  Indeed, the charges against Petitioner arise from Chapter 109B which is distinct from the chapter (Chapter 109A) in which the "sexual act" definition is found.  So, the definition of "sexual act" and its pronouncement that "contact between the penis and vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight," is irrelevant for defining "penetration" for the purposes of Petitioner's sentencing.  That language was defining "contact" for the purposes of a different statute.  It was not creating a circular definition[8] of "penetration" for the sentencing guidelines applicable to Petitioner.

---

[8] Petitioner implicitly argues that the operative definition was "'penetration' is 'penetration, however slight.'"  By including the defined word in the definition, such a definition would be circular.  It also must be emphasized that even § 2246 does not include this as a "definition" of "penetration," only as a phrase in the definition of another word.

To determine the truly operative definition of penetration, one must recall the purpose of Petitioner's testimony on the point.  He was testifying in support of objections to his presentence report.  Specifically, he was challenging the application of several recommended sentencing guideline enhancements, including U.S.S.G. §§ 2G2.1(b)(4) and 2G2.2(b)(4), which each provide an enhancement of 4 levels if the underlying offense "involved material that portrays … sadistic or masochistic conduct," U.S. Sent'g Guidelines Manual §§ 2G2.1(b)(4), 2G2.2(b)(4) (U.S. Sent'g Comm'n 2018).  *See cr. doc. 98* at 5-6.  This enhancement (on three different counts) was being considered because, according to the presentence report, "sadistic conduct can include the penetration of a young child … by an adult[.]"  *Cr. doc. 77* at ¶¶ 40, 51, 68.  This conclusion is based upon controlling precedent that "an image of an adult sexually penetrating a prepubescent child portrays conduct from which a court can presume that pain and humiliation were inflicted upon the child as a means to give sexual gratification to the viewer of the image and, thus, is inherently sadistic or violent for purposes of § 2G2.2(b)(4)."  *United States v. Batres*, 284 F. App'x 584, 586 (10th Cir. 2008) (citing *United States v. Kimler*, 335 F.3d 1132, 1143 (10th Cir. 2003)).  Thus, the question before Judge Brack with respect to Petitioner's PSR objections was whether the video showed "sexual penetration."  Petitioner has not pointed to anything in the record that Judge Brack applied anything but a common English-language understanding of those

words when he made his findings after watching the videos.[9]  In fact, when making the relevant finding on "penetration," Judge Brack did not reference § 2246 or the phrase "penetration, however slight," but instead simply found that the "video involving JD3 clearly shows both digital and penile penetration."  *Cr. doc. 113* at 2.  Petitioner thus fails to establish that the operative definition of "penetration" was some "legal definition" of which Petitioner was unaware due to the alleged failure of his counsel.  This failure is fatal to his claim of ineffective assistance of counsel on this matter.[10]

The second fatal flaw in Petitioner's argument is the implicit claim that his conduct with the victims on the video would only qualify as "penetration" under the "penetration, however slight" standard but not under his common understanding of the term.  Even if one assumes that the operative definition was governed by the more encompassing standard, he has presented no evidence that the conduct **only** met that standard.  The sole evidence on the record on this question is Judge Brack's finding that the "video involving JD3 **clearly** shows both digital and penile penetration."  *Cr. doc. 113* at 2 (emphasis added).  This finding certainly does not support Petitioner's implicit

---

[9] In contrast, when ruling on a separate PSR objection, Judge Brack expressly stated that he was utilizing the definition of "sexual contact" from 18 U.S.C. § 2246 because it was controlling for that guideline.  *See cr. doc. 125* at 2-3 (for increase pursuant to U.S.S.G. § 2G2.1(b)(2)(A) where issue is whether offense involved "sexual contact.").  Notably, even when using that definition, the Court was not relying on it to define the concept of "penetration."  *See id.* (quoting 18 U.S.C.§ 2246(3), "'Sexual contact' means 'the intentional touching . . . of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.'").
[10] Aside from this definitional claim, Petitioner does not, and cannot, claim that his counsel was ineffective for not advising him of what was recorded on the videos that Petitioner himself produced.

claim that the video showed only the slightest penetration, let alone only contact. *See doc. 56* at 38:12-16 ("I didn't know that that – that contact – I didn't know that contact could be construed as penetration according to the law.").  As Petitioner has not established that any alleged definitional misunderstanding made a difference to the Court rejecting his claim that he did not penetrate his victim, his argument fails.

The third fatal flaw in Petitioner's argument is his explicit assertion that, if he had been more fully advised by his counsel, he would not have testified on the issue of penetration.  The undersigned recommends that the Court find that this assertion lacks any credibility.  First, Petitioner was advised by his counsel not to pursue the objection with respect to penetration because (a) he was unlikely to prevail, (b) because doing so would force the judge into the disagreeable position of having to watch child pornography videos, and (c) even if he prevailed, it would not change his guideline range.[11]  *See doc. 56* at 77:21-81:7; *see also doc. 17-1* (adopted in *doc. 56* at 63:3-5).[12]  Yet, this

---

[11] Mr. Hosford was entirely correct that prevailing on Petitioner's objection related to penetration would have no impact on Petitioner's guideline range.  At most, if Petitioner had prevailed, it would have reduced the Adjusted Offense Levels for Group 1, Group 2 and Group 4 by four levels.  *Cr. doc. 77* at ¶¶ 40, 47, 51, 56, 68, 73; *but see cr. doc. 99* at 5-6 (The four-level enhancement to Group 1 would have likely applied regardless of Petitioner penetrated his particular victims.  Group 1 included all of Petitioner's child pornography which included videos not produced by Petitioner and which Petitioner does not dispute included sexual penetration of infants and toddlers.).  When all the Groups were combined into a Combined Adjusted Offense Level, it would have been reduced from 46 to 42.  *Cr. doc. 77* at ¶¶ 74 – 77.  Once the adjustments for the Chapter Four Enhancement and Acceptance of Responsibility were made, his Total Offense Level would move from 51 to 47.  *Id*. at ¶¶ 78-80.  However, as an Offense Level of 43 is the maximum, in both scenarios his Offense Level would be capped at 43.  *Id*. at ¶ 81.  With an Offense Level of 43, his guideline range would still have been life regardless of Criminal History Category.

[12] To the extent that Petitioner denies receiving such advice, the undersigned concludes that Ms. Hosford is credible on these points, and Petitioner is not credible.  The undersigned recommends the Court make the same credibility findings.

compelling advice did not persuade Petitioner.  Given Petitioner's rejection of the

unassailable advice he did receive, his self-serving claims that, if only Mr. Hosford

added additional advice about the standard for penetration or had told Petitioner that

he (Mr. Hosford) saw penetration on the videos, Petitioner would have retreated from

his firm desire to testify, are completely incredible.  Moreover, Petitioner concedes that,

during his cross-examination by the prosecutor, he realized that "whatever [his]

understanding of penetration had been prior to taking the stand, [he] at that moment,

understood that, under the law, that what happened on the video did, in fact, qualify,

under the law, as penetration."  *Doc. 56* at 48:10-14; *see also doc. 2* at 7-8 ("It was not until

an evidentiary hearing on June 4, 2018 that I was informed by the the [sic] prosecutor

that my conduct did indeed constitute penetration.  [At] that point … I was correctly

informed by the prosecutor as to the legal definition of penetration….").  Given that

fact, he still had time to admit to Judge Brack that the video would show that he

"legally" penetrated his victim.  He could have directed Ms. Hosford to withdraw that

objection now that he understood it was meritless.  That course of action would have

avoided the harm he now claims he suffered through Ms. Hosford's alleged

ineffectiveness – upsetting the judge by making him watch Petitioner's child

pornography videos.  But he did not.  *See doc. 56* at 80:20-81:7.  Moreover, Petitioner did

not seek to rectify the problem when he had an opportunity for a *de novo* sentencing in

front of Judge Brack when the appellate court ruled in his favor on the multiplicity

issue. *See id.* at 112:18-113:25.  Consequently, his current claim that he would not have

maintained the objection and would not have testified that there was no penetration if

he had only received further advice from his counsel is not credible.  The undersigned

recommends that the Court find it so.

 The fourth fatal flaw in Petitioner's argument is that he fails to establish any

prejudice.  Petitioner's sole theory in Claim 1 as to the alleged prejudice he suffered is

that he was deprived of a chance for a below-guidelines sentence when the sentencing

court received a poor impression of his character at the June 4, 2018 evidentiary hearing.

*Doc. 2* at 6-7.  I conclude that Petitioner cannot credibly argue that his strategic

choices—i.e., objecting to the factual accuracy of the amended presentence report and

testifying accordingly at the June 4, 2018, evidentiary hearing—eliminated his chance of

receiving a below-guidelines sentence because the Court received a poor impression of

his character.  Petitioner does not plausibly allege that "but for counsel's alleged

deficient performance, the district court would have exercised its discretion to impose a

below-guideline sentence."  *United States v. Burk*, 488 F. App'x 332, 333 (10th Cir. 2013)

(unpublished).  Here, the totality of the evidence offered at the sentencing hearing

weighed against a downward departure, regardless of whether Petitioner had pursued

the objection at issue.  *See United States v. Orozco-Sanchez*, 804 F. App'x 952, 961 (10th

Cir. 2020) (unpublished) (affirming that a petitioner failed to establish prejudice in an

ineffective assistance of counsel claim where his criminal history would have weighed

against a downward departure); *see generally cr. doc. 139*.  As Judge Brack noted at sentencing, the amended presentence report assigned Petitioner a criminal history category of III, an offense level of 43, and a total guideline sentence of 2,040 months (170 years).  *Cr. doc. 139* at 99:4-10.  The Court also noted at sentencing that it had heard two psychologists testify, respectively, that Petitioner had a medium and a high risk of reoffending, *id.* at 97:13-17, and that Petitioner "possessed over 8,000 images of child pornography, 163 of which were of young family members while the others were of other children, many ranging in age from infants to under 12 years old,"  *id.* at 99:17-20.  These factors, among others, contradict Petitioner's contention that "the sole exacerbating factor [that caused the sentencing court to not impose a below-guidelines sentence] was [Petitioner's] testimony on the contact-versus penetration issue."  *Doc. 2* at 7.

Indeed, the Court's statements at the sentencing hearing contradict Petitioner's contention that Petitioner's testimony at the hearing "cast an ominous shadow over all the good things [Petitioner] had accomplished in [his] life" and caused the Court to overlook the mitigating circumstance of Petitioner's "childhood history."  *Id.* at 6.  The sentencing court's statements show that, in imposing sentence, it focused on the severity of Petitioner's crimes and risk of reoffending rather than its impression of his character.  For example, the Court stated that it was its intention to impose a sentence that would place Petitioner in prison for the balance of his life, because it "believe[s]

that there is some conduct that is so horrific, so horrendous, so egregious that … by partaking of that conduct, by committing that conduct [Petitioner forfeited his] right to live free among the public at large." *Cr. doc. 139* at 96:8-12.  The Court also specifically acknowledged Petitioner's "childhood history," but it made clear that it did not consider it to militate against a within-guideline sentence:

> [I]f, as a result of abuse, [Petitioner] sustained, [him]self, at a time when [his] psyche was fragile and being formed, then that's not right, it's not fair. But in the process, [Petitioner has] inflicted worse on [his] own victims. And I can't allow it. I can't have that anymore. I can't allow that to happen. I can't allow that that possibility even exists.

*Id.* at 96:24-97:5.  While Judge Brack did mention numerous matters which factored into the 170-year sentence he imposed, he notably did not mention anything about Petitioner's testimony related to penetration or Judge Brack's displeasure at Petitioner forcing him to view the videos.  *See generally id*.  Given Petitioner's crimes and Judge Brack's statements at sentencing, the undersigned cannot imagine that Judge Brack would have considered a below-guideline sentence.  Therefore, the undersigned recommends that the Court find that Petitioner fails to establish a "'substantial,' not just 'conceivable,' likelihood" that but for Mr. Hosford's alleged errors, he would have received a shorter sentence.  *See Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

To summarize, each of the flaws explained above are independently fatal to Petitioner's arguments in his first Claim that Mr. Hosford "made errors so serious that counsel was not functioning as the 'counsel' guaranteed … by the Sixth Amendment,"

18

or, in the alternative, that Petitioner was prejudiced by his counsel's errors, and I recommend rejecting them.  *Strickland*, 466 U.S. at 687.

**Claim 2: Mr. Hosford's alleged failures during plea bargaining.**

In Petitioner's second Count of ineffective assistance of counsel, Petitioner alleges that Mr. Hosford provided ineffective assistance during plea bargaining.  *Doc. 2* at 7-9.  Petitioner makes two different arguments under this category.  The first argument is that Mr. Hosford did not communicate a "plea bargain of a 50 year sentence" made by the government "early in the criminal case."  *Id.* at 8.  The second argument is related to a later plea offer ("a plea of 20-45 years") which, if Mr. Hosford had "reviewed the evidence and informed [Petitioner that he] could not seek a defense based on the penetration issue, [he] would have accepted without hesitation."  *Id.* at 8. Neither of these arguments withstand scrutiny and should be rejected.

With respect to Petitioner's first argument, on April 22, 2015, two formal plea offers were made by the government – one for a fixed 50-year sentence and one for a 25-75 year[13] sentencing range.  *See doc. 17-5* at 1.  Indeed, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  *Missouri v. Frye*, 566 U.S. 134, 145 (2012).  If counsel fails to do so, the affected defendant will generally be able to establish

---

[13] In the Petition, Petitioner did not make any claims related to a failure to advise about the 25-75 sentencing range plea offer.  As such, that claim is arguably not before the Court.  Nonetheless, as it was discussed at the petition hearing, the undersigned addresses it for completeness and clarity.

the first prong of a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To establish the prejudice prong, the defendant must show "a reasonable probability they would have accepted the earlier plea offer … [and] if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability that [neither would have]."  *Frye*, 566 U.S. at 147-48.  Petitioner's claim pursuant to his first argument fails on both prongs.

Most importantly, the undersigned concludes that Mr. Hosford did indeed communicate these April 2015 plea offers made by the government.  According to Mr. Hosford, they were presented to Petitioner by Mr. Hosford on May 13, 2015.  *See doc. 17-1* at 3; *doc. 56* at 70:14-72:17.  Petitioner is less clear on this point.  In his petition hearing testimony, he appeared to concede that the 50-year offer was presented to him in May 2015, but only in passing and in the context that his counsel had already rejected it because counsel "knew [Petitioner] wouldn't take it."  *Doc. 56* at 31:16.  While he recalls at least this discussion, Petitioner disclaims any recollection of his counsel even mentioning the 25-75 year offer.  *See id.* at 17:6-19:19, 32:25-33:9.  As an initial matter, the undersigned concludes that, even pursuant to Petitioner's story, Mr. Hosford presented Petitioner with the 50-year offer sufficiently under *Frye*.  To the extent that Petitioner's story would constitute deficient performance by Mr. Hosford, I would reject it.  First, it is not credible that counsel did not present these plea offers to Petitioner.  The

undersigned finds Mr. Hosford credible on the point given that both he and Petitioner were actively seeking a resolution of this case short of trial. Given that context, it makes no sense that he would not present the plea offers. It makes even less sense that he would discuss the 50-year offer but not the simultaneously-offered 25-75 year range offer. Moreover, the emails between counsel and the prosecutor strongly support Mr. Hosford's account that he presented these offers to Petitioner. *See doc. 17-5* at 30. In those contemporaneous communications with the prosecutor, Mr. Hosford advised that Petitioner would not take the plea offers, but would accept a 15-year agreement. *Id*. Additionally, those emails reflect that the prosecutor was waiting to hear Petitioner's response to the plea offers which would make no sense if Mr. Hosford had rejected them on Petitioner's behalf before the May 13th meeting. *Id*. Finally, the undersigned notes Petitioner's obvious self-interest in feigning ignorance of the early plea offers. In short, to the extent that Petitioner refutes that he was presented with the early plea offers, his testimony is not credible and the undersigned recommends finding it so. Given that the undersigned concludes that Petitioner was presented these offers, his claim under this theory fails.

In addition to claiming that Mr. Hosford told Petitioner that Mr. Hosford had rejected the plea offers without even first presenting them to Petitioner, Petitioner also argues that, when they had that discussion, the plea offers had expired. *Doc. 56* at 17: 13-18. Indeed, according to the letter from the prosecutor, the April 2015 plea offers

expired on May 6, 2015, or one week before Mr. Hosford met with Petitioner about the plea offers. *See doc. 17-5* at 1.  As Mr. Hosford testified, he understood that the plea offers were still open because he had advised the prosecutor that he would not be able to meet with Petitioner until that week after the letter deadline had passed.  *Doc. 56* at 71:20-72:1, 98:2-9.  This understanding is also corroborated by the subsequent email communication with the prosecutor who was clearly waiting to hear Petitioner's response to the offer.  The undersigned credits Mr. Hosford's testimony that the plea offers were still open when he presented them to Petitioner on May 13, 2015.

Of course, Petitioner's claim on this theory also fails because he cannot show a reasonable probability that he would have accepted those plea offers.  Counsel clearly testified that Petitioner rejected these offers as he viewed them as life sentences.  *See doc. 56* at 71:13-72:1.  Again, Petitioner's testimony is obtuse.  He claims that he was told by his counsel about the 50-year plea offer, but also told that counsel had rejected it because he knew Petitioner would not accept it.  So, Petitioner appears to deny affirmatively rejecting the plea offer.  However, in neither his Petition nor his petition hearing testimony, does Petitioner claim that he would have accepted the 50-year plea offer or the 25-75 year range offer.[14]  This failure is fatal to him satisfying the second prong under *Frye*.  *See e.g., United States v. Watson*, 766 F.3d 1219, 1226 (10th Cir. 2014).

---

[14] Even if he claimed he would have accepted it, the undersigned would find such a claim not credible. *See Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir.2013) ("[W]e remain suspicious of bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel's errors….").  In

Petitioner's second theory related to ineffective assistance of counsel in the context of the plea negotiations is based upon "a plea of 20-45 years" which Petitioner claims he was offered.  *Doc. 2* at 8.  Regarding this offer, Petitioner declares that, if Mr. Hosford had "reviewed the evidence and informed [Petitioner that he] could not seek a defense based on the penetration issue, [he] would have accepted without hesitation." *Id*.  The flaw with this argument is that Petitioner presents no evidence of such an offer within the meaning of *Frye*.  In *Frye*, the Supreme Court clearly limited its holding to "formal offers" and noted that "the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations."  566 U.S. 134, 146.  Here, Petitioner presents no evidence (including any testimony at the petition hearing) beyond the bald assertion in his Petition of any 20-45 years plea offer.  Petitioner may have meant to refer to the discussions about a 20-75 years range offer which is referenced in the prosecutor's email back to Mr. Hosford upon learning of Petitioner's rejection of the April 2015 plea offers.  *See doc. 17-5* at 30.

---

May 2015, Petitioner was completely committed to pursuing his suppression argument.  Moreover, if Petitioner, who the record shows beyond any doubt was deeply and aggressively involved in his own defense, *see e.g. doc. 17-4*, had been interested in considering the 50-year plea offer, he would not have sat silently at that moment he was informed of the possibility of such a resolution.  *See doc. 56* at 49:22-51:19.  Furthermore, the undersigned finds Mr. Hosford credible (and Petitioner not credible) that Mr. Hosford continued to discuss with Petitioner the possibility of taking a 50-year offer.  *See id.* at 70:4-74:3; *see also doc. 17-5* at 50-51 (February 2016 email from the prosecutor to Mr. Hosford indicating that Mr. Hosford was still trying to reopen the possibility of the 50-year and 25-75 year range plea offers).

That range was not an offer, let alone a formal one, given that the prosecutor made clear that "[i]f your client were to ask me lower [sic] the range on the 25-75 year plea agreement to 20 years (i.e. an offer of an argued sentence range of 20-75 years), I would run that possibility past my supervisors…." *Id.* Indeed, none of the plea offer discussions which occurred after the suppression hearing and involved limits to the term of imprisonment ever materialized into formal offers. *See, e.g., doc. 17-5* at 50-51 (email from prosecutor to Mr. Hosford resending earlier plea offers stating "I am willing to go back to my supervisors to see if I could offer something more like these earlier offers. Obviously we are in a slightly different position now than we were back in April, and I am not promising that I will be able to make either of these offers now…."). This reality is significant because it is fatal to any *Lafler/Frye* claim based on Petitioner's argument that Mr. Hosford was ineffective in his advice about the meaning of penetration. The issue over whether Petitioner had penetrated his victims arose for the first time in the Form 13 presentence report which was disclosed on February 5, 2016. *Doc. 17-2.* Given that there is no evidence of any formal offer limiting Petitioner's exposure to imprisonment subsequent to that date, Petitioner cannot claim that any failure of advice on penetration impacted his decision to take such an offer.

Based on the foregoing, the undersigned concludes that Petitioner cannot establish any ineffective assistance claim based upon his counsel's conduct in plea

negotiations.  As such, it is recommended that the Court dismiss such claims with prejudice.

> **Count 3: The sentencing court's alleged errors in assessing $730,036.00 in restitution and Mr. Hosford's alleged failure to object to those errors.**

Petitioner's third and final grounds for relief concerns the sentencing court's assessment of $730,036.00 in restitution and Mr. Hosford's failure to challenge the court's alleged errors in assessing restitution.  Petitioner argues that the Court erred in assessing $100,000 in restitution for counts 4-6 and 8 of the superseding indictment, because the plea agreement provided for $25,000 to each victim associated with those counts and "[n]othing in the record indicates or states there was one victim per count." *Doc. 2* at 11.  Petitioner also argues that the Court's assessment of restitution for all counts of the superseding indictment was "premature" because the plea agreement stated that victims would be awarded restitution if they were "identified and request[ed] restitution prior to sentencing" and no victims requested restitution within the 90-day time frame for doing so.  *Id.* at 11-12.  Finally, Petitioner argues that Mr. Hosford was ineffective for failing to object to these two errors.  *Id.* at 12-13.

I conclude that the Court lacks subject matter jurisdiction over Petitioner's claims in Count 3.  "[T]he language of 28 U.S.C. § 2255 only allows the court to grant relief to federal prisoners claiming the right to be released, [so] challenges to restitution orders are not cognizable, even when coupled with a challenge to a sentence of imprisonment."  *United States v. Satterfield*, 218 F. App'x 794, 795 (10th Cir. 2007)

(unpublished); *United States v. Sorsby*, 2021 WL 4901655, *3-*4 (10th Cir. Oct. 21, 2021)

(denying certificate of appealability because no reasonable jurist could disagree that

amount of restitution cannot be challenged under § 2255) (unpublished); *United States v.*

*Roibal-Bradley*, 428 F.Supp.3d 635, 642-43 (D.N.M. 2019); *United States v. Melot*, No. 14-

cv-0865 MCA/SMV, 2015 WL 12778371, at *8 (D.N.M. June 30, 2015) (collecting cases for

the proposition that "a challenge to a restitution order brought under the guise of an

ineffective assistance of counsel claim is not cognizable in a habeas petition because it

does not seek release from custody").  Therefore, with respect to whether Count 3 raises

cognizable claims under § 2255, it is of no consequence that the appeal waiver in

Petitioner's amended plea agreement reserved his right to bring claims for ineffective

assistance of counsel, *see cr. doc. 122* at ¶ 31, and I recommend denying Petitioner's

claims in Count 3.

### III.   CONCLUSION

For the foregoing reasons, I recommend that the Court DENY Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (*doc. 1*) and DISMISS this case with prejudice.  I further recommend that the Court find that reasonable jurists would not debate whether that the petition states a valid claim of the denial of a constitutional right or whether the procedural ruling was correct, and accordingly I recommend denying a certificate of appealability.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**